**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:23-cr-195-2 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| SHERMAN THOMAS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### OPINION AND ORDER

Following a three-day trial, a jury convicted Defendant Sherman Thomas of conspiracy to distribute and possess with intent to distribute controlled substances, possession with intent to distribute methamphetamine, using or maintaining a drug premises, and possession of a firearm or ammunition by a convicted felon.  Defendant, who represented himself at trial, seeks a judgment of acquittal or, in the alternative, a new trial.

### BACKGROUND

A grand jury indicted Defendant Sherman Thomas and three other defendants with conspiracy to distribute and possess with intent to distribute controlled substances.  (ECF No. 1, PageID #1.)  Mr. Thomas was also charged with possession with intent to distribute methamphetamine, using or maintaining a drug premises, and possession of a firearm or ammunition by a convicted felon.  (*Id.*, PageID #2–3.)  Two other members of the conspiracy were charged in separate indictments.

Before trial, the other defendants pled guilty, leaving Mr. Thomas to stand trial alone.  At trial, the United States presented eight witnesses in its case-in-chief, including the agents who investigated the conspiracy.  (ECF No. 217; ECF No. 218; ECF No. 219; ECF No. 220.)  With standby counsel available, Mr. Thomas cross-examined each but, as is his right, did not present evidence or testify in his defense.  (*Id.*)  On June 25, 2025, the jury received the case and returned a verdict the next day after about four and a half hours of deliberations.  (ECF No. 220, PageID #3943; ECF No. 221, PageID #3951–52.)  The jury unanimously returned a guilty verdict on all counts with which Mr. Thomas was charged.  (*Id.*, PageID #3953–55.)

In recognition of the fact that Mr. Thomas is representing himself, and to accommodate his status in detention pending sentencing, the Court extended the deadline for filing of post-trial motions.  (Minutes, July 9, 2025.)  It also did so to allow for preparation of the trial transcripts and to ensure delivery of them to Mr. Thomas.  (ECF No. 211.)  At Defendant's request, the Court extended the deadline again.  (ECF No. 226.)

Eventually, Mr. Thomas filed a two-page, single-spaced motion for judgment of acquittal pursuant to Rule 29 and, in the alternative, for a new trial pursuant to Rule 33.  (ECF No. 243.)  At a high level, the motion identified certain issues that Mr. Thomas said he would develop later in further briefing.  (*Id.*)  Also, he concurrently filed a motion for leave to file a supplemental memorandum in support of his Rule 29 and Rule 33 motion.  (ECF No. 242.)  In the interest of justice, the Court granted the motion for leave to allow Mr. Thomas to develop his arguments and set

2

a deadline of December 1, 2025 for any supplemental brief.  (ECF No. 245.)  In doing so, the Court warned that, absent extraordinary circumstances, it would not further extend the deadline.  (*Id.*, PageID #4205.)

On December 1, 2025, Mr. Thomas filed a notice of filing of his supplemental memorandum in support of his post-trial motions (ECF No. 247), a supplemental memorandum in support of his Rule 29 and Rule 33 motions (ECF No. 246), and a motion for an extension of time to file supplemental evidence in support of the post-trial motion (ECF No. 248).  The Court denied the motion for an extension of time, indicating that it would proceed to consideration of the grounds Mr. Thomas advanced in the submissions already on file and set a deadline for any response by the United States.  (ECF No. 249.)

On January 13, 2026, the United States filed its opposition.  (ECF No. 250.) Then, on January 23, 2026, Mr. Thomas filed a motion for an extension of time to file a reply, explaining that he had not yet received the United States' opposition and, therefore, could not timely file his reply.  (ECF No. 251.)  Because Mr. Thomas had not yet received the United States' opposition, the Court granted that motion and extended the deadline to file a reply to February 23, 2026.  (ECF No. 252.)  But then on February 23, 2026, Mr. Thomas filed another motion for extension of time to file his reply.  (ECF No. 253.)  The Court again extended the deadline, this time to March 10, 2026, and indicated that no further extensions would be granted.  (ECF No. 254.)  On March 10, 2026, however, Mr. Thomas requested yet another extension (ECF No. 255.)  In response, the Court declined to defer its review of the post-trial

3

motion. (ECF No. 256.) In doing so, the Court found that a reply was not necessary because of the ample opportunity Mr. Thomas had to be heard on the issues, although the Court did indicate that it would consider a reply if it was received before ruling on the motion. (*Id.*) On April 20, 2026, Mr. Thomas filed his reply, which the Court considered in ruling on the motion. (ECF No. 258.)

## ANALYSIS

Recognizing the state of the record, the Court takes up Defendant's motion for a judgment of acquittal under Rule 29 and, in the alternative, for a new trial under Rule 33.

## I. Motion for a Judgment of Acquittal (Rule 29)

Under Rule 29, a court may set aside a verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c)(2). But it may do so only where "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Therefore, on a motion under Rule 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also United States v. Wheat*, 988 F. 3d 299, 306 (6th Cir. 2021). In analyzing this question, it is the job of the jury—not a court—to work "fairly to resolve conflicts in the testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Hamm*, 952 F. 3d 728, 736 (6th Cir. 2020) (quoting *Jackson*, 443 U.S. at 319).

Under this standard, even a trial court, which heard the testimony of witnesses firsthand, does not weigh the evidence or judge the credibility of witnesses. *See Burks*

4

*v. United States,* 437 U.S. 1, 16 (1978); *United States v Paulus,* 894 F. 3d 267, 275 (6th Cir. 2018) (quoting *United States v. Talley,* 164 F. 3d 989, 996 (6th Cir. 1999)). A court draws all reasonable inferences in favor of the jury's verdict. *United States v. Bowens,* 938 F. 3d 790, 794 (6th Cir. 2019) (citations omitted). And it determines whether a reasonable mind might fairly find guilt beyond a reasonable doubt based on the record as a whole. *United States v. Fawaz,* 881 F.2d 259, 261 (6th Cir. 1989); *see also United States v. Stone,* 748 F. 2d 361, 363 (6th Cir. 1984).

### I.A.    Material Variance

Defendant seeks a judgment of acquittal on Count 1, the conspiracy charge, arguing that there is a "material variance between the conspiracy charged and the trial evidence presented." (ECF No. 246, PageID #4207.) In doing so, Defendant contends that this material variance caused a prejudicial spillover. (*Id.,* PageID #4210.) Defendant predicates his argument on the notion that the United States presented to the jury multiple conspiracies involving different actors and locations with which he was neither charged nor involved in. (ECF No. 258, PageID #4265.) At trial, however, the United States presented ample evidence from which a rational trier of fact could (and did) find beyond a reasonable doubt that Defendant conspired to distribute and possess with intent to distribute controlled substances.

Defendant argues that the use of DEA investigative reports and case files for O'Shane Smith (a co-conspirator charged in another indictment), along with evidence demonstrating the connection between Melvin Hodge, a co-conspirator charged in the same indictment as Mr. Thomas, and Quinton Parries (charged in a separate

5

indictment), constitutes a separate conspiracy.  (ECF No. 246, PageID #4208–10.) This argument misses the mark.  At trial, the United States presented evidence of one conspiracy, outlining different activities taking place within that conspiracy and the different roles of the various participants in it.  As just one example, Special Agent Tyler Parkison of the DEA testified that Carvin Cook, a co-conspirator charged in this case, picked up a package containing compression binder sent by UPS from Connecticut to Cleveland.  (ECF No. 218, PageID #3545.)  Based on their investigation of Cook, agents obtained a ping warrant for Defendant's cellphone number, which identified an apartment on Father Caruso Drive in Cleveland as a frequent location for the phone.  (*Id.*, PageID #3548–49.)  Surveillance connected Mr. Thomas to this apartment.  (*Id.*, PageID #3550.)

In September 2022, agents surveilled delivery of three packages to a house in Cleveland Heights.  (*Id.*, PageID #3553–54.)  Shortly thereafter, Mr. Thomas arrived, picked up the packages, and brought them to a house on Reyburn Road in Cleveland. (*Id.*, PageID #3554–55.)  O'Shane Smith testified that he saw Defendant and a co-conspirator, Frank Black, making pills at the Reyburn Road residence.  (ECF No. 219, PageID #3653.)  Agents secured a federal search warrant for the apartment on Father Caruso Drive.  (ECF No. 218, PageID #3558–59.)  Among other things recovered in the apartment were three cellphones, which contained texts involving drug talk between Mr. Thomas, Frank Black, and Melvin Hodge.  (*Id.*, PageID #3570–75.)  This evidence alone establishes the elements of the conspiracy charged in Count 1.

And the United States presented considerably more evidence than that:  three plastic baggies containing white powder; a drug ledger; a blender containing powder residue; a heat sealer typically used to package bulk amounts of cash; a Glock 23 firearm; a kilogram press; and 22 plastic bags containing multicolored tablets with a shamrock logo stamped on them.  *(Id., PageID #3570–75.)*  Agents recovered all this evidence from Defendants' apartment.  (*Id.*)  Therefore, the jury had ample evidence from which it could (and did) find that Mr. Thomas agreed with his co-conspirators to manufacture methamphetamine with the intent to distribute, knowingly joined and participated in the conspiracy charged in Count 1, and took certain overt acts to accomplish the ends of the conspiracy.  (ECF No. 221, PageID #3951–52.)  Contrary to Defendant's claim, the evidence at trial established the elements of the conspiracy charged in Count 1, and the proof did not materially vary from conspiracy charged.

### I.B. Prejudicial Spillover

Defendant argues that there was prejudicial spillover when the United States presented evidence of multiple conspiracies instead of the single conspiracy with which he was charged.  (ECF No. 246, PageID #4210.)  However, the record confirms that the United States presented evidence of a single drug conspiracy.  Therefore, no prejudicial spillover occurred.

To support his argument, Defendant relies on *United States v. Mize,* 814 F.3d. 401 (6th Cir. 2016).    There, the United States charged three defendants with conspiracy to distribute and possession with intent to distribute oxycodone and conspiracy to commit money laundering.  *Id.*  A jury returned guilty verdicts on all counts.  *Id.* at 405.  On appeal, the Sixth Circuit overturned the convictions finding

that there was a prejudicial variance because the United States presented evidence of a separate conspiracy that was similar to the one that the defendants ran.  *Id.*

Defendant's reliance on *Mize* is misplaced.  Here, the evidence presented at trial satisfies the standard under Rule 29 to support the jury's verdict on Count 1. Unlike *Mize,* the United States did not present evidence of a separate conspiracy or compare the conspiracy to another.  Indeed, the jury's verdict shows that it carefully considered and parsed the evidence on Count 1 in returning a guilty verdict. Accordingly, based on its review of the record, the Court is satisfied that the evidence is sufficient to sustain the conviction, and that no prejudicial variance occurred.

## II.      Motion for a New Trial (Rule 33)

In the alternative, Defendant asks for a new trial under Rule 33.  (ECF No. 246; ECF No. 258.)  Rule 33 gives a court discretion to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a). "Motions for a new trial are not favored and are granted only with great caution." *United States v. Garner*, 529 F. 2d 962, 969 (6th Cir. 1976) (citing *United States v. Hoffa*, 382 F.2d 856, 962 (6th Cir. 1967)).

A motion for a new trial involves a more generous standard of review than a motion under Rule 29.  *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979), *aff'd*, 633 F. 2d 219 (6th Cir. 1980).  Such a motion may raise the argument that the jury's verdict is against the manifest weight of the evidence, though that evidence might be legally sufficient for a finding of guilt.  *United States v. Hughes*, 505 F.3d 578, 592-93 (6th Cir. 2007).  On a motion under Rule 33, the court may act

as a thirteenth juror, assess the credibility of witnesses, and weigh the evidence. *United States v. Lutz,* 154 F. 3d 581, 589 (6th Cir. 1998).

Still, "such motions are granted only 'in the extraordinary circumstances where the evidence preponderates heavily against the verdict.'" *Hughes,* 505 F.3d at 593 (quoting *Turner,* 490 F. Supp. at 593).  The district court's role seeks to ensure that there is not a miscarriage of justice, *United States v. Ashworth*, 836 F. 2d 260, 266 (6th Cir. 1988), such as where the judge disagrees with the jury's resolution of conflicting evidence, *Tibbs v. Florida,* 457 U.S. 31, 42 (1982).

### II.A.  Late Disclosure of Key Evidence (*Jencks* and *Giglio*)

Defendant seeks a judgment of acquittal or a new trial, arguing that the "volume and timing" of the *Jencks* and *Giglio* disclosures caused him to be "denied adequate opportunity for review and [preparation for] cross-examination."  (ECF No. 243, PageID #4201.)  Defendant predicates this argument on the claim that he did not receive the government's production of *Jencks*, *Giglio*, and Rule 26.2 materials until "testimony was underway" at trial.  (*Id.*)

According to the United States, however, these materials were provided to Defendant and his standby counsel before trial.  (ECF No. 250, PageID #4240.)  Indeed, on June 23, 2025, the United States confirmed that it emailed Defendant's standby counsel a copy of *Jencks* materials on June 18, 2025.  (ECF No. 218, PageID #3613.)  Further, Defendant was provided hard copies of the documents on the first day of trial.  (*Id.*)  Defendant's standby counsel confirmed that he received the materials the previous week and that Defendant received a hard copy at the start of trial.  (*Id.*, PageID #3614.)  Additionally, these materials only pertained to three

witnesses:  O'Shane Smith; Quinton Parries; and Special Agent Chokshi.  (ECF No. 218, PageID #3613.)

Under the Jencks Act, 18 U.S.C. § 3500, and Rule 26.2, the party who did not call the witness must give the opposing party "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a).  Under Rule 26(a), the materials are only required to be given "after a witness other than the defendant has testified on direct examination." Fed. R. Crim. P. 26.2(a).

Here, all witnesses for whom the United States had *Jencks* material testified the day after Defendant received a hard copy of the materials.  (ECF No. 219.) Therefore, because Defendant was given the materials earlier than required by law, there was no violation of *Jencks* or Rule 26(a).  The only witness who testified on the same day Defendant received a hard copy of the *Jencks* materials was DEA Special Agent Tyler Parkison.  (ECF No. 218.)  However, there was no *Jencks* information applicable to Agent Parkison, and Defendant had the opportunity to cross-examine the agent during trial.  (*Id.* PageID #3604–09.)  For these reasons, the record shows that the United States complied with *Jencks, Giglio*, and Rule 26.2.

## II.B.  Inadequate Time to Review Jury Instructions

Defendant also argues that he did not receive adequate time to review or object to jury instructions because he received them "moments before presentation to the jury."  (ECF No. 243, PageID #4201.)  Defendant relies on Rule 30(b) as a basis for his argument, which states, "the court must inform parties before closing arguments how it intends to rule on the requested instructions."  Fed. R. Crim. P. 30(b).

Contrary to Defendant's claim, the record shows that the Court finalized and informed the parties about jury instructions well before closing arguments and that Defendant had ample to review and object to the jury instructions.  During the first day of trial, the Court gave Defendant a copy of the jury instructions, noting that it was just a draft.  (ECF No. 217, PageID #3385.)  On the second day of trial, the Court notified both parties that the jury instructions might need to be revised and that they should be prepared to discuss any objections, desired changes, or additional comments to the instructions the following day.  (ECF No. 219, PageID #3793.)  On the third day of trial, the Court provided revised jury instructions to both parties and allowed Defendant time to review them.  (ECF No. 220, PageID #3829–44.)  After the United States requested changes, Defendant was then given the opportunity to object, which he did.  (*Id.*, PageID #3846–47.)  In fact, he lodged multiple objections. (*Id.*)

Before finalizing the jury instructions, the Court gave Defendant a 49-minute break to thoroughly review the newly amended and revised instructions.  (*Id.*, PageID #3846.)    After the break, Defendant requested changes to the jury instructions:

> [Defendant]:  I want to add pattern 2, 1.02 to the jury duties.
>
> The Court:  Bear with me.  1.02?
>
> Pattern Instruction 1.02 is called Jurors' Duties.  It mirrors what is included under that heading on page 2 of the purposed instructions. So that is already there.
>
> [Defendant]:  It was different.  I just wanted to use the pattern instruction, if possible.

The Court:  Bear with me for a moment.

All right.  I will unless there's an objection from the United States, use the pattern with one minor modification.  I will say the only differences between the purposed instruction I had given you and the instruction you're asking for, Mr. Thomas, I thought were more favorable for you. But I will use the pattern instruction at your request.

The one thing I will make a change to is, I will not refer to the language in paragraph 2 about "the lawyers have talked about the law during their arguments," since you are representing yourself. I will stick to the language I had, which is, "You will hear about the law during closing arguments."  But that is the only difference.

(*Id.,* PageID #3848–51.)  As the Court advised Mr. Thomas at the time, it thought that the requested change to this proposed instruction was less favorable to Defendant than the instruction as drafted.  Still, the Court adopted the change Mr. Thomas requested.  Additionally, the Court made two other changes at Defendant's request.  (*Id.*)

Therefore, the Court finalized the jury instructions with input from the parties before closing arguments.  Further, the record shows that the Court provided drafts of the instructions to Mr. Thomas days in advance and, when providing the final proposed instructions for the charge conference, afforded him sufficient time to review them and make a record.  Accordingly, there was no violation of Rule 30(b), and this argument lacks merit.

## II.C.  Jury Confusion and Unanswered Questions

During deliberations, the jury asked six questions.  (ECF No. 221, PageID #3948–49.)  Defendant contends that these questions demonstrate the jury's

doubt about key aspects of the United States' case.  (ECF No. 258, PageID #4265.) The record shows otherwise.

Instead, the jury's questions directly reflect Defendant's cross-examinations of the United States' witnesses during trial.  His cross-examinations were targeted, focused, and attempted to poke holes in the prosecution's case—or at least to raise reasonable doubt.  In this respect, Mr. Thomas ably served as his own counsel. Among the final charges the Court gave to the jury was an instruction asking members of the jury "to use the same level of commitment and conscientiousness you would want if you or one of your friends or a family member was charged with a crime."  (ECF No. 220, PageID #3943.)  With that instruction echoing in the ears of the jurors, the next morning the jury asked a number of questions.  (ECF No. 221, PageID #3948–49.)  These questions tracked some of the most significant questions Defendant asked on cross-examination.  For example, why were no fingerprints taken at the apartment on Father Caruso Drive and did the DEA try to track down the woman whose name was on the lease of that apartment.  (*Id.*, PageID #3948.)  After the Court, with the input of the parties, provided answers to the jury's questions, the jury returned a unanimous verdict finding Defendant guilty.  (ECF No. 221, PageID #3953–55.)  This record does not show confusion on the part of the jury.  It shows conscientiousness and attention to the Court's instructions.

Further, Defendant contests the Court's answer to the jury's questions.  (ECF No. 246, PageID #4212.)  Defendant argues that the Court "responded generically," constituting a failure to answer the questions and reversible error.  (*Id.*)  After the

13

questions were presented to Defendant and the United States, the Court provided the parties with a proposed response:

> Ladies and gentlemen, some of your questions were asked and answered during the testimony and trial.  Some were not, but the evidence has been fully presented to you.  Please use your best efforts individually and collectively to review the testimony and evidence submitted to you and apply the instructions I've given you to arrive at a verdict in this case.

(ECF No. 221, PageID #3949.)

Defendant argues that the Court committed reversible error by providing that response and not responding separately to the six questions.  (ECF No. 246, PageID #4212.)  As Defendant notes, when a "jury makes explicit its difficulties, the judge must clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13 (1946).  Still, a court must not "invade the jury's province as a fact-finder." *United States v. Nunez*, 889 F.2d 1564, 1569 (1989).

Here, the Court exercised its discretion by reminding the jurors that the United States chose to present the evidence to them that it did.  The jury's questions asked, essentially, why additional evidence—about which Mr. Thomas made clear through his cross-examinations—was not presented.  The Court did not wish to re-open the evidence or to put before the jury evidence that the prosecution elected not to present, which led to the answer proposed.  (ECF No. 221, PageID #3949.)  But before giving that answer to the jury, the Court provided both parties an opportunity to discuss its proposed answer to the jury.  (ECF No. 221, PageID #3949.)  Indeed, in response to the Court's proposed answer, Defendant raised no concerns or objections and instead responded, "That's respectable."  (*Id.*)

14

Accordingly, the Court finds that there was no confusion of the jury or unanswered questions that warrant a new trial.

### II.D.  Additional Arguments

To the extent that Defendant's arguments raise concerns about his Sixth Amendment rights, the Court gave Mr. Thomas multiple opportunities for the assistance of counsel, but each time he declined representation.  (ECF No. 217, PageID #3375–85; ECF No. 221, PageID #3958–59.)

Indeed, just before the trial started, the Court asked Defendant if he still wished to represent himself or if he wanted his standby counsel to represent him. (ECF No. 217, PageID #3375.)  Defendant affirmed that he wanted to proceed *pro se*. (*Id.*)  Additionally, the Court repeatedly acknowledged and discussed with Defendant that it would be easier for him to prepare for trial if he had counsel, but each time he chose to represent himself.  (*Id.,* PageID #3385.)  Once the jury returned a guilty verdict, the Court again gave Defendant the option to have counsel help with post-trial motions and sentencing.  But Defendant again declined the assistance of counsel. (ECF No. 221, PageID #3958–59.)

Ultimately, the Court gave Defendant multiple opportunities to proceed with counsel throughout this case, but Defendant repeatedly declined representation.  On multiple occasions, the Court found that Defendant knowingly and voluntarily waived his right to counsel and that his Sixth Amendment rights were satisfied. Therefore, Defendant's Sixth Amendment rights were not violated.

15

\*     \*     \*

Throughout the course of this case, the Court has thoroughly analyzed Defendant's arguments, both those discussed above and the others contained in or implied by his briefing. Based on its experience hearing the evidence while presiding at trial and its review of the record in connection with post-trial motions and other matters, the Court cannot say that the interests of justice require a new trial, the jury's verdicts are against the manifest weight of the evidence, or the verdicts otherwise depend on facts, credibility determinations, or other evidentiary findings that call the verdicts into question. Nor can the Court say that this case presents any extraordinary circumstances justifying a new trial. Additionally, in the Court's view, Defendant's arguments and claimed errors, both individually and cumulatively, did not result in any substantial legal error. Therefore, the Court finds that this case does not meet the high standard of Rule 33, and it declines to exercise its discretion to order a new trial.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Rule 29 motion and, in the alternative, Rule 33 motion (ECF No. 243).

    **SO ORDERED.**

Dated: May 11, 2026

                     J. Philip Calabrese
                     United States District Judge
                     Northern District of Ohio

16